**SECOND DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 1, 2018**

# In the Court of Appeals of Georgia

A18A0162. THE CITY OF COLLEGE PARK et al. v. PARADIES-ATLANTA, LLC et al.

BROWN, Judge.

In this ad valorem real property tax refund suit, Clayton County, the Clayton County Board of Commissioners and its individual members, and the Clayton County Tax Commissioner (collectively, "Clayton County") and the City of College Park (with Clayton County, the "defendants") appeal the superior court's order granting summary judgment to Paradies-Atlanta, LLC ("Paradies") and Paradies-Atlanta II, LLC ("Paradies II," and, with Paradies, the "plaintiffs"). The defendants primarily challenge the superior court's ruling that the plaintiffs' interests in the premises at issue in this action constitute non-taxable usufructs. For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Pinnacle Properties V v. Mainline Supply of Atlanta*, 319 Ga. App. 94, 94 (735 SE2d 166) (2012); see also OCGA § 9-11-56 (c). "We review a trial court's grant of summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the nonmovant." (Citation and punctuation omitted.) *Thomas v. Summers*, 329 Ga. App. 250, 250 (764 SE2d 578) (2014); see also *Pinnacle Properties V*, 319 Ga. App. at 94.

So viewed, the evidence shows that the City of Atlanta, which owns Hartsfield-Jackson Atlanta International Airport (the "Airport"), entered into two seven-year agreements, one with each plaintiff (the "Agreements"), for the plaintiffs to operate retail establishments at various locations within the Airport (the "Parcels"). Each of the four Parcels at issue in this appeal is located in Clayton County, and two of the Parcels also are within the city limits of College Park. The term of each Agreement included the 2015 tax year.

In 2015, the defendants assessed ad valorem real property taxes against the plaintiffs' interests in the Parcels.[1] Clayton County assessed real property taxes in the amounts of $80,757.90 against Paradies and $159,149.46 against Paradies II, and College Park assessed $29,110.86 in real property taxes against Paradies. After the plaintiffs paid these taxes, they instituted this action to recover these amounts under OCGA § 48-5-380, which governs refunds of taxes by counties and municipalities.

Following discovery, the trial court granted the plaintiffs' motion for summary judgment, concluding that the rights in the Parcels that the City of Atlanta has granted to the plaintiffs constitute non-taxable usufructs. The court rejected Clayton County's alternative contention that the plaintiffs' interests in the Parcels are taxable as franchises. This appeal followed.

1. In an enumeration of error not joined by the City of College Park, Clayton County contends that the trial court erred when it determined that the plaintiffs do not have taxable "franchise interest[s]" in the Parcels. In this action, however, the plaintiffs seek refunds of *real property* taxes they paid to Clayton County and the City of College Park; they do not seek refunds of any purported franchise taxes. See

---

[1] As best as we can tell, neither defendant assessed ad valorem real property taxes against the plaintiffs' interests in the Parcels before 2015. It is unclear on the current record what precipitated this change.

3

OCGA § 48-5-3 ("All *real property* including, but not limited to, leaseholds, interests less than fee, and all personal property shall be liable to taxation and shall be taxed, except as otherwise provided by law.") (emphasis supplied). Compare OCGA § 48-5-421 ("All franchises of value not provided for in this article shall be returned for taxation and taxed pursuant to law as is other property."). Whether the plaintiffs' interests in the Parcels potentially may subject them to franchise taxes has no bearing on the relief they seek in this action, and the record contains no indication that the defendants have collected or assessed – or even sought to collect or assess – franchise taxes from the plaintiffs. Because the plaintiffs are not seeking a refund of franchise taxes for which they filed a return, the trial court properly concluded that Clayton County could not deny the refund of *real property* taxes on this ground.[2]

2. The defendants contend that the trial court erred when it concluded that the plaintiffs' interests in the Parcels are usufructs, rather than estates for years. We disagree.

> [A] usufruct is created when the owner of real estate grants to another person "the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. In such a

---

[2] We express no opinion on whether the plaintiffs may have a franchise interest for which they are obligated to file a return under OCGA § 48-5-421.

4

case, no estate passes out of the landlord" and the usufruct may not be conveyed except by the landlord's consent, nor is it subject to levy and sale.

*Richmond County Bd. of Tax Assessors v. Richmond Bonded Warehouse Corp.*, 173 Ga. App. 278, 279 (325 SE2d 891) (1985) (quoting OCGA § 44-7-1 (a)); accord *Diversified Golf, LLC v. Hart County Bd. of Tax Assessors*, 267 Ga. App. 8, 10 (598 SE2d 791) (2004) ("[A] usufruct is not considered an interest in land and therefore it is not subject to ad valorem taxation."). "A usufruct has been referred to as merely a *license* in real property, which is defined as authority to do a particular act or series of acts on land of another without possessing any estate or interest therein." (Citation, punctuation, and footnote omitted; emphasis in original.) *Jekyll Dev. Assoc. v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 273, 274 (1) (523 SE2d 370) (1999). By way of contrast, an estate for years, which does not involve the landlord-tenant relationship, "carries with it the right to use the property in as absolute a manner as may be done with a greater estate and is subject to ad valorem taxation." (Citations and punctuation omitted.) *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 279; see also OCGA §§ 44-6-101; 44-6-103; *Diversified Golf, LLC*, 267 Ga. App. at 14 ("[A] usufruct exists where the lessee takes only a circumscribed and limited use

5

of the premises and facilities, where the restrictions imposed are so pervasive as to be fundamentally inconsistent with the concept of an estate for years, or where the owner retains dominion and control over the property or the business operated thereon.") (citations and punctuation omitted).

> Where the term of a lease is for a period greater than five years, a rebuttable presumption arises that the parties intended to create an estate for years rather than a usufruct. To resolve whether the presumption has been overcome in this case, we must examine the terms of the lease agreements and determine what interests the parties intended to convey.

(Citations and punctuation omitted.) *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 279; see also *Diversified Golf, LLC*, 267 Ga. App. at 10 ("[W]hether an estate in the land passes to the tenant, or he obtains merely the usufruct depends upon the intention of the parties; and this is true without regard to the length of the term.") (citation and punctuation omitted). In a case such as this, involving a tax dispute with government authorities, the terms of each instrument of conveyance "must be scrutinized objectively to determine whether the legal effect of the agreement between [the parties] is to give [the grantee] a usufruct or an estate for years." *Allright Parking of Ga. v. Joint City-County Bd. of Tax Assessors*, 244 Ga. 378, 386 (3) (260

6

SE2d 315) (1979); accord *Macon-Bibb County Bd. of Tax Assessors v. Atlantic Southeast Airlines*, 262 Ga. 119, 120 (414 SE2d 635) (1992).

Factors to be considered in determining whether the parties intended to create a usufruct include: (i) the terms used in the instrument of conveyance to describe the grantee's rights; (ii) any provisions in the instrument addressing the parties' understanding as to liability for ad valorem taxes, see *Diversified Golf, LLC*, 267 Ga. App. at 11-12; (iii) the grantor's "retention of dominion or control over the leased property," *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 279; (iv) which party has retained the duties to keep and maintain the premises and appurtenances; and (v) whether the grantee may assign the lease or allow any part of the leased premises to be used by others without the grantor's consent, see id. at 280; accord *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 121; *Allright Parking of Ga.*, 244 Ga. at 386-387 (3). "Although an estate for years may be encumbered or somewhat limited without being reduced to a usufruct, if the lease imposes sufficient conditions and limitations upon the use of the premises to negate the conveyance of an estate for years the interest passed is reduced to a mere usufruct." (Citations and punctuation omitted.) *Diversified Golf, LLC*, 267 Ga. App. at 10-11.

7

Here, the Agreements' seven-year terms give rise to a presumption that they conveyed estates for years. See *Diversified Golf, LLC*, 267 Ga. App. at 10; *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 279. That presumption, however, is sufficiently rebutted by numerous provisions in the Agreements indicating that the plaintiffs may not use the Parcels "in as absolute a manner as may be done with" an estate for years. See OCGA § 44-6-103; *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 279-280 (concluding that the parties intended to create a usufruct, notwithstanding the 50-year lease term); accord *Eastern Air Lines v. Joint City-County Bd. of Tax Assessors*, 253 Ga. 18, 18-19, 20 (5) (315 SE2d 890) (1984) (30-year leases granted usufructs); *Allright Parking of Ga.*, 244 Ga. at 385-387 (3) (35-year lease conveyed a usufruct); *Diversified Golf, LLC*, 267 Ga. App. at 10-14 (50-year lease conveyed a usufruct).

First, each Agreement explicitly notes that the City of Atlanta owns the property on which the Parcels are located and further provides: "The rights of [plaintiff] hereunder constitute a usufruct, which is not subject to levy or sale. No estate shall pass out of [the] City." While these provisions are not controlling in this

tax dispute, they are indicative of the parties' intent to convey a usufruct.[3] See *Jekyll Dev. Assoc.*, 240 Ga. App. at 275 (3) (a statement in the lease defining the interest created as "an estate for years" was one of several factors to be considered in determining the nature of the conveyance).

Second, numerous provisions in each Agreement show that the City of Atlanta has retained dominion and control over the Parcels. Both Agreements prohibit the plaintiffs from subletting, assigning, transferring, or encumbering any of their rights under the Agreements without the City of Atlanta's consent. See *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 121 (restrictions on the grantee's ability to sublet or assign the premises indicate a usufruct); *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 280 (same). The City of Atlanta also retains the rights to: (i) unilaterally expand or contract each Parcel's size and require the plaintiffs to relocate to other areas in the Airport; (ii) enter each Parcel to inspect it or make ordinary repairs "at any reasonable time and as often as [the City of Atlanta] considers necessary"; and (iii) terminate the Agreements without cause on 30 days' notice. See *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 121 (the landlord's right to take back parts

---

[3] Pretermitting whether there is any merit to the defendants' contention that the trial court gave too much weight to this factor, the trial court's ultimate conclusion was correct, for the reasons discussed below.

of the leased premises on 90 days' notice was evidence that the tenant did not have an estate for years); *Jekyll Dev. Assoc.*, 240 Ga. App. at 277 (5) ("[T]he right to inspect the premises given to the lessor . . . constitutes a retention of control consistent with the grant of a usufruct. . . ."). Moreover, all construction and improvements on the Parcels require prior approval by the City of Atlanta, as does all Parcel-related advertising. See *Camp v. Delta Air Lines*, 232 Ga. 37, 41 (205 SE2d 194) (1974) (a provision requiring the grantor's approval before making improvements or erecting signs or other advertising is inconsistent with an estate for years).

The Agreements also restrict: (i) the hours during which deliveries may be made to the Parcels and who may make such deliveries; (ii) the types of services offered and activities conducted on the Parcels; (iii) the prices that may be charged for goods and services provided on the Parcels; and (iv) the hours during which businesses on the Parcels must be open. See *Eastern Air Lines*, 253 Ga. at 20 (3) (pervasive restrictions on the grantee's use of the property are indicative of a usufruct); *Diversified Golf, LLC*, 267 Ga. App. at 12-14 (same). The Agreements likewise contain detailed customer-service requirements for the businesses operated on the Parcels and similarly detailed requirements concerning each business's point-

of-sale system. The plaintiffs also must keep detailed records for each business and make those records "available immediately" to the City of Atlanta upon request.

The Agreements further require the plaintiffs to comply with numerous City of Atlanta policies, including its policies on disadvantaged business enterprises, equal employment opportunities, non-discrimination, ethics, and conflicts of interest. See *Macon-Bibb County Bd. of Tax Assessors*, 262 Ga. at 120-121 (requiring the grantee to implement an affirmative action program and comply with various federal regulations is evidence of a usufruct); *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 280 (subjecting activities on the premises to various regulations is indicative of a usufruct). Moreover, the Agreements require the plaintiffs to keep the Parcels and improvements thereon in good repair at the plaintiffs' expense. "If the parties had intended to convey an estate for a term of years, [these duties] would have been the lessee's responsibility under the law, thus making it unnecessary to insert such a provision in the body of the agreement." *Richmond County Bd. of Tax Assessors*, 173 Ga. App. at 280.

The defendants rely in large part on provisions in each Agreement rendering the plaintiffs liable for "all taxes levied or assessed" against any interests of the plaintiffs in the Parcels and any improvements, personal property, furniture, or

11

fixtures added to the Parcels by the plaintiffs. These provisions, however, which do not explicitly address ad valorem real property taxes, shed no light on whether the plaintiffs' interests are subject to such taxes in the first place.[4] In any event, these provisions are insufficient to outweigh the numerous other restrictions on the plaintiffs' use of the Parcels discussed above. See *Diversified Golf, LLC*, 267 Ga. App. at 11, 14 (holding that the lease as a whole showed that the lessor "retained dominion and control over the property and that [the lessee] took only a circumscribed and limited use of the premises," notwithstanding a provision making the lessee liable for "all taxes and governmental charges on any interest it held pursuant to the lease").

The defendants also highlight the plaintiffs' obligations to maintain various types of insurance coverage. While this may be indicative of the grant of an estate for years, as is the case with the tax liability provisions, it also is insufficient to outweigh the various limitations addressed above. See *Allright Parking of Ga.*, 244 Ga. at 386-387 (3); compare *Buoy v. Chatham County Bd. of Tax Assessors*, 142 Ga. App. 172, 173-174 (235 SE2d 556) (1977) (a 50-year lease granted more than a mere usufruct

---

[4] Notably, the plaintiffs do not contest their 2015 assessments for personal property taxes by the defendants.

where the lessees obtained the right to build and operate a motel on the lessor's lands and were required to obtain "broad insurance coverage against loss to the premises and loss arising from the operation of the motel," and the lessor did not purport to exercise any dominion or control over the operation of the motel).

In sum, the defendants' claim that the plaintiffs' use of the Parcels is only "somewhat limit[ed]" is belied by the numerous, pervasive restrictions governing nearly all aspects of the plaintiffs' rights in the Parcels. We therefore affirm the trial court's ruling that the plaintiffs' interests in the Parcels constitute non-taxable usufructs.

3. Finally, in an argument not joined by the City of College Park, Clayton County enumerates as error the trial court's failure to address its claim that the plaintiffs are liable for ad valorem taxes on various "leasehold improvements" installed on the Parcels. Clayton County contends that the plaintiffs "indisputably owned" these improvements during the 2015 tax year, regardless of whether they acquired only usufruct interests in the Parcels. We discern no reversible error.

Clayton County's contention in this regard ignores the plain language of the Agreements, under which the plaintiffs must surrender all improvements to the City of Atlanta upon the expiration or termination of the Agreements. These provisions are

13

in accord with Georgia law, under which real property includes the land and all improvements thereon, which cannot be separated from each other. See *Fulton County Bd. of Assessors v. McKinsey & Co.*, 224 Ga. App. 593, 594 (1) (481 SE2d 580) (1997); accord *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 725 (1) (368 SE2d 326) (1988) (land and the improvements thereon constitute "one item of property"). Consequently, any interest that the plaintiffs may have had in any improvements on the Parcels in 2015 extended no further than their interests in the Parcels themselves. Accordingly, Clayton County's claim in this respect provides no basis for reversal.

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*